IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DANIEL BRADSHAW,

    Plaintiff,

v.   No. CIV 08-787 LFG/ACT

CITY OF FARMINGTON,
MARK NORWOOD, in his
individual and official capacity
as an employee of the City of
Farmington, *et al.,*

    Defendants.

## MEMORANDUM OPINION AND ORDER

### Introduction

THIS MATTER is before the Court on Defendants Mark Norwood ("Norwood") and City of Farmington's ("City" or "Defendants") Motion for Partial Summary Judgment Based Upon Qualified Immunity and Other Grounds, filed February 24, 2009. [Doc. 44.] The motion is fully briefed and ready for resolution without the need for a hearing. [Doc. Nos. 46, 48.] After careful consideration of the pertinent law and pleadings, the Court determines that the motion should be granted.

### Background

The following facts are taken from Daniel Bradshaw's ("Bradshaw") Complaint [Doc. 1] the parties' Joint Status Report [Doc. 32] or the motion for summary judgment pleadings.

1

Bradshaw formed a corporation, Rally in the Rockies ("Rally"), with Defendant Creig Wallace ("Wallace") for the purposes of organizing, promoting and operating a motorcycle rally in the Four Corners area. [Doc. 1, ¶ 8.] Subsequently, the business relationship between Bradshaw and Wallace deteriorated as Wallace believed Bradshaw was withholding revenues from their corporation. [Id., ¶ 9.] On March 5, 2004, the business dispute purportedly was resolved via a written and signed settlement agreement between Bradshaw and Wallace. [Id., ¶ 10.]

In April 2004, notwithstanding the purported settlement, Wallace approached Farmington Police Officer Norwood alleging that Bradshaw had embezzled $2,500.00 from Rally. [Id., ¶ 10.] Wallace advised Norwood that Bradshaw had deposited a check for $2,500.00, made out to Rally from Durango Harley Davidson into Bradshaw's "Direct Comm., Inc. account," rather than into Rally's corporate account. [Doc. 44, ¶ 6.] Wallace provided Norwood with a copy of the check from Durango Harley Davidson made payable to Rally. Wallace also gave Norwood a copy of a deposit receipt from Direct Comm., Inc. account showing a deposit of $2,500, dated April 9, 2003. [Id.]

Wallace also provided Norwood with a copy of a Vendor Application, dated July 14, 2003, indicating Daveron, Inc. had applied for a vendor stand at the rally. Wallace turned over a copy of a cashier check number 96877 from Daveron to Rally in the amount of $450.00, which Wallace contended was not deposited into the corporate account. [Id., ¶ 7.]

Based upon this information and documentation, Norwood completed an Affidavit for Arrest Warrant, and in accordance with city police policy, submitted it to the Assistant District Attorney ("ADA") Arlon Stoker for approval. ADA Stoker approved the form of affidavit and signed it. Norwood then submitted the Affidavit to State Magistrate Judge William Vincent, who issued an arrest warrant for Bradshaw for the crime of embezzlement of over $250 but no more than $2,5000. The warrant was entered into the database for the National Crime Information Center ("NCIC").

2

Bradshaw was not arrested until more than a year after the arrest warrant was issued. Officer Norwood did not execute the arrest warrant and was not involved in the subsequent arrests.

On August 8, 2005, Bradshaw was arrested in La Plata County, Colorado, under the April 2004 warrant issued in Farmington. Later, the same day, the embezzlement charges were dismissed by Judge Vincent on behalf of the State. [Doc. 1, ¶ 12.] Norwood was never advised by the Court or the DA's office that the charges later were dismissed without prejudice by the State. The City of Farmington Police Department records indicated the case was "inactive" after it was filed because the DA's office had taken over the prosecution of the charges. Norwood had no more involvement with the case. [Id., ¶¶ 11, 12.][1]

Despite the dismissal of the August 2005 charges, Bradshaw contends he was again arrested on the same warrant on September 1, 2006, and spent approximately 1½ days in jail. [Doc. 1, ¶ 13.] During that second arrest, Bradshaw allegedly was confronted by eight police officers with guns drawn, was handcuffed, and was forced to sit on his hands in a squad car despite having an injured and infected hand. [Doc. 1, ¶ 14.] News of the arrest was supposedly on the front pages of local newspapers in Farmington, New Mexico and Durango and Cortez, Colorado, portraying Bradshaw as an alleged "crook." For reasons unknown to Bradshaw, Defendants did not properly document or communicate with each other that the Criminal Complaint against Bradshaw had been dismissed or alternatively, that none of these entities ensured that the subject arrest warrant had been removed from NCIC. [Doc. 1, ¶ 18.]

---

[1] Bradshaw denies that some of the above facts are undisputed on grounds that the allegations are beyond his knowledge and he has not yet had an opportunity to take the deposition of Norwood. [Doc. 46, ¶ 2.] However, Bradshaw did not provide a Rule 56(f) affidavit stating that "for specified reasons," he was unable to present facts essential to justify his opposition to the summary judgment motion. Fed. R. Civ. P. 56(f). (*See* discussion *infra*.)

On August 28, 2008, Bradshaw brought a Complaint for Damages against the City of Farmington, County of San Juan, San Juan County Communications Authority, State of New Mexico,[2] Mark Norwood, and Creig Wallace. [Doc. 1.] Bradshaw's Complaint alleges that the City and Norwood deprived him of his Fourth Amendment right to be free from an unreasonable seizure. Bradshaw also asserts that his detention was unlawful because there was no probable cause to believe that he was engaging in criminal activity. Thus, he was deprived his Fourth Amendment right to be free of false imprisonment. Such actions allegedly damaged Bradshaw's reputation and caused him loss of income. [Doc. 1, Count I, Count II.]

Bradshaw's Complaint also sets out state law claims of false imprisonment apparently against all Defendants, intentional infliction of emotional distress against Norwood, and defamation against various Defendants. [Doc. 1, Count III, Count IV.]

On October 31, 2008, Defendants City and Norwood filed an Answer to the Complaint, and on February 24, 2009, the present motion for summary judgment. Defendants' motion seeks summary judgment based upon qualified immunity for all Fourth Amendment claims, and/or in the alternative, summary judgment on the Fourth Amendment claims and state tort claims of false imprisonment and intentional infliction of emotional distress. The City and Norwood do not seek summary judgment at this time on the claim of defamation. [Doc. 44, pp. 2-3.] Discovery is proceeding in this case after the Rule 26(f) conference was held on February 10, 2009. [Doc. Nos. 41, 42.]

---

[2] On January 15, 2009, Bradshaw filed a notice of voluntary dismissal of the State of New Mexico. [Doc. Nos. 29, 30.]

**Discussion**

I.      TIMELINESS OF QUALIFIED IMMUNITY MOTION

Bradshaw argues at the end of his responsive pleading that Defendants' Motion for Summary Judgment based on qualified immunity grounds is premature. [Doc. 46, p. 5.] In addition, Bradshaw asserts that the standard for granting summary judgment is "so high" at this stage of the proceedings that Bradshaw's claims should proceed to trial. [Id.]

The Court is unpersuaded that Defendants' qualified immunity motion is premature. Indeed, it is well settled that qualified immunity, if granted, entitles an officer "not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Moreover, the qualified immunity determination should be made at the earliest stage possible in the litigation. Pearson v. Callahan, 129 S. Ct. 808, 815 (Jan. 21, 2009).

In addition, the Court rejects Bradshaw's argument that he should be allowed to conduct discovery and take Norwood's deposition before a decision is reached on the motion for summary judgment. While true that "summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition," Been v. O.K. Industries, Inc., 495 F.3d 1217, 1235 (10th Cir. 2007) (internal citation omitted), this protection is not absolute. The protection "arises only if the nonmoving party files an affidavit explaining why he or she cannot present facts to oppose the motion." Id. To benefit from the rule, a party "at a minimum must ask the court to refrain from acting on the summary judgment request until additional discovery can be conducted." Id. (internal citations omitted).

Relief under Rule 56(f) is often liberally granted, but it does not come automatically. *See* Been, 495 F.3d at 1235. Before the court will postpone a summary judgment ruling pending further discovery, a Rule 56(f) affidavit must be submitted to the Court, providing a description of the

particular discovery needed, an explanation how the discovery would preclude the entry of summary judgment, and a statement justifying why this discovery was not made or could not be obtained earlier. Hackworth v. Progressive Casualty Ins. Co., 468 F.3d 722, 732-33 (10th Cir. 2006), *cert. denied*, 127 S.Ct. 2883 (2007). The showing made in the Rule 56(f) affidavit must be specific. Trask v. Franco, 446 F.3d 1036, 1042 (10th Cir. 2006). *See also* Ben Ezra, Weinstein & Co. v. Am. Online Inc., 206 F.3d 980, 987 (10th Cir.) (holding that, under Rule 56(f), nonmoving party seeking additional discovery must demonstrate precisely how additional discovery will lead to a genuine issue of material fact), *cert. denied*, 531 U.S. 824 (2000).

Bradshaw did not submit a Rule 56(f) affidavit and while he specifies in his response brief that he needs to take the deposition of Defendant Norwood, this is insufficient. He must show how the discovery sought would preclude entry of summary judgment. Ben Ezra, 206 F.3d at 987. He did not do so. The Court concludes that a qualified immunity motion is not premature at this stage of the pleadings. Indeed, it should be brought at the earliest possible stage of the proceeding.

In addition, "a party ordinarily may not attempt to meet a summary judgment challenge head-on but fall back on Rule 56(f) if its first effort is unsuccessful." Been, 495 F.3d at 1235. To some extent, that is what occurred here. Bradshaw's opposition to the motion for summary judgment first attempts to argue the merits of the motion. Then after discussing the merits, Bradshaw raises the argument that the motion is premature. The Court is unpersuaded as explained above.

II.  **QUALIFIED IMMUNITY AS TO FOURTH AMENDMENT CLAIMS**

    **A.  Legal Standard**

Qualified immunity protects public officials "from undue interference with their duties and from potentially disabling threats of liability." Harlow v. Fitzgerald, 457 U.S. 800, 806 (1982).

"Qualified immunity is designed to protect public officials who act in good faith, on the basis of objectively reasonable understandings of the law at the time of their actions, from personal liability on account of later-announced, evolving constitutional norms." Pierce v. Gilchrist, 359 F.3d 1279, 1299 (10th Cir. 2004). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

"When an officer asserts a defense of qualified immunity, the plaintiff bears a heavy two-part burden." Mecham v. Frazier, 500 F.3d 1200, 1204 (10th Cir. 2007). *See also* Saucier v. Katz, 533 U.S. 194, 200-01 (2001), *overruled in part by* Pearson, 129 S. Ct. 808 (2009) (identifying underlying purposes of qualified immunity). To overcome a qualified immunity defense, the plaintiff must show that (1) the defendant(s) violated a constitutional or statutory right, and (2) the right was clearly established at the time of the defendant(s)' unlawful conduct. Mecham, 500 F.3d at 1204. *See* Pearson, 129 S. Ct. at 821-22 (courts need not rigidly follow the two-step process in the order set out, but lower courts still may follow this procedure depending on the case).

Taken in the light most favorable to the party asserting the injury, the Court determines whether the facts alleged show the officer's conduct violated a constitutional right. If the officer's conduct did not violate a constitutional right, the inquiry ends and the officer is entitled to qualified immunity." Wilder v. Turner, 490 F.3d 810, 813 (10th Cir. 2007), *cert. denied*, --- U.S. ----, 128 S.Ct. 1229 (2008).

The plaintiff must also show that the constitutional right was clearly established. Vondrak v. City of Las Cruces, 535 F.3d 1198, 1204 (10th Cir. 2008), *cert. denied*, 129 S.Ct. 1003 (2009). The Tenth Circuit Court of Appeals has held that, for a right to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains. Cortez v. McCauley, 478

7

F.3d 1108, 1114-15 (10th Cir.2007) (en banc) (citations, quotations, alterations omitted). The plaintiff bears the burden of showing that the defendant violated his clearly established constitutional rights. Mecham, 500 F.3d at 1204.

The question before the Court involves Plaintiff's allegations that his Fourth Amendment right to be free from an unlawful seizure and detention was violated by Norwood and City. The Fourth Amendment protects the right of individuals to be free from improper arrest and detention. U.S. Const. Amend. IV ("The right of people to be secure in their persons ... against unreasonable seizures ... shall not be violated.").

**B.     Analysis**

*1.     Defendant Norwood*

Bradshaw alleges that Norwood violated his right to be free from unlawful detention by lacking probable cause to support the affidavit that resulted in the initial arrest warrant being issued. He also asserts that Norwood should have conducted a more thorough or reasonable investigation prior to applying for the arrest warrant, and specifically, should have contacted Bradshaw himself regarding the allegations. Bradshaw also alleges that Norwood's actions in applying for the arrest warrant and his failure to discover the dismissal of the criminal complaint over a year later deprived him of his Fourth Amendment right to be free of false imprisonment.

In evaluating the first of the two-step qualified immunity inquiry, *i.e.,* whether Bradshaw has shown that Norwood violated a constitutional or statutory right, the Court determines whether "a reasonably well-trained officer in [Norwood's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant. Malley, 475 U.S. at 345.

Here, Norwood was relying on statements of a citizen who came to the police department with documentation that supported allegations of embezzlement. Wallace supplied a copy of a check made out to Rally and a deposit receipt from a company named Direct Comm., Inc. which Wallace represented was a company owned by Bradshaw. Wallace also provided a copy of a vendor application and a related copy of a cashier check made out to Rally. Wallace informed Norwood he could find no record or evidence to indicate the check was deposited into the Rally account. [Doc. 44, Norwood Affidavit.] Based on the documentation and information supplied by Wallace, Norwood reasonably believed probable cause existed to support an application for arrest warrant for embezzlement. [Id., Norwood Aff., ¶ 5.] *See* Easton v. City of Boulder, Colo., 776 F.2d 1441, 1449-1450 (10th Cir. 1985) (when examining informant evidence used to support a claim of probable cause for a warrant, the scepticism and careful scrutiny usually found in cases involving informants "is appropriately relaxed if the informant is an identified victim or ordinary citizen witness."), *cert. denied*, 479 U.S. 816 (1986).

Based on the evidence presented by a victim-witness, the Court concludes that the affidavit for arrest warrant [Doc. 44, Ex. B] supports Norwood's belief that probable cause existed. Stated differently, a reasonably well-trained officer like Norwood would not have known that his affidavit, under the circumstances of this case, failed to establish probable cause or that he should not have applied for the arrest warrant. Reasonably competent officers could have concluded that an arrest warrant should issue. "The standard of probable cause does not require indubitable or necessarily convincing evidence, but only so much 'reasonably trustworthy information' as 'to warrant a prudent man in believing that the [arrestee has] committed or [is] committing an offense.'" Easton, 776 F.2d at 1450 (*quoting* Beck v. Ohio, 379 U.S. 89, 91 (1964)).

9

Bradshaw provides no affidavit testimony or evidence to contradict the information supplied to Norwood by Wallace. Indeed, Bradshaw appears to argue that he was entitled to the money at issue because of his partnership role in Rally. [Doc. 46, ¶ 11.] In addition, Bradshaw argues that if Norwood would have contacted Bradshaw, Norwood would have learned that Bradshaw and Wallace entered into a settlement agreement about their business-related disputes. Yet, even if true, Norwood was not required to believe Bradshaw's version, when Wallace came forward after the purported settlement agreement was reached and still complained of embezzlement by Bradshaw. *See* Spalsbury v. Sisson, 250 F. App'x 238, *6 (10th Cir. Sept. 11, 2007) ("'A policeman . . . is under no obligation to give any credence to a suspect's story,' and even a plausible explanation in no way 'require[s] the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause.'" (internal citations omitted).

Bradshaw also claims that Norwood conducted a limited investigation that his actions constituted "a deliberate or reckless failure to conduct a reasonable investigation." [Doc. 46, p. 4.] The Court disagrees for the same reasons stated above. Norwood relied on the complaints of a victim-citizen who brought first-hand knowledge of the complaint and supporting documentation. *See* Easton, 776 F. 2d at 1449-1450 ("Basis of knowledge is likewise less of a problem in the victim-witness cases, for by definition the victim or witness is reporting first-hand knowledge."). In addition, Bradshaw did not come forward to demonstrate that Wallace's statements did not constitute reasonably trustworthy information sufficient to lead a prudent police officer to conclude that Bradshaw had embezzled money from Rally. Bradshaw did not show that the information known to Norwood did not establish probable cause. There simply is no evidence that Norwood's actions amounted to a "deliberate or reckless failure" to reasonably investigate the matter.

In giving the benefit of the doubt to Bradshaw, Norwood's actions, at worst, might amount to a negligence. However, negligent or innocent mistakes do not establish Fourth Amendment violations. Beard v. City of Northglenn, 24 F.3d 110 (10th Cir. 1994). The failure to investigate a matter fully, to exhaust every available lead, or to interview all potential witnesses will rarely constitute a violation of the Fourth Amendment. Id. at 116.

Even assuming, for purposes of argument, that the affidavit failed to provide sufficient probable cause for issuance of the arrest warrant, the good faith exception applies. *See* United States v. Leon, 468 U.S. 897, 920-21 (1984) (where officer acts with objective good faith and obtains a search warrant from a magistrate judge, the officer cannot be expected to question the issuing magistrate judge's probable-cause determination or his judgment that the form of the warrant is technically sufficient.) Here, even if the magistrate judge who issued the arrest warrant erred in his probable cause determination, the record firmly establishes that affiant Norwood was acting in good faith when he sought the search warrant. *See also* Romero v. Fay, 45 F.3d 1472, 1476 (10th Cir. 1995) (law enforcement officials who mistakenly conclude that probable cause exists are still entitled to qualified immunity if their conclusion is reasonable) (internal citations omitted).

Moreover, this not a case where the affiant "knowingly and intentionally, or with reckless disregard for the truth, make a false statement in an affidavit," or where the affiant intentionally or recklessly omitted material facts , which would constitute a violation of the Fourth Amendment. *See* Franks v. Delaware, 438 U.S. 154, 171-72 (1978); Stewart v. Donges, 915 F.2d 572, 581-83 (10th Cir. 1990). There is no such evidence here.

Similarly, Bradshaw fails to demonstrate that Norwood falsely imprisoned Bradshaw. Indeed, it is undisputed that Bradshaw played no role in the subsequent arrests or incarceration of Bradshaw that occurred more than a year after Bradshaw submitted his application for arrest warrant

to the magistrate judge. Norwood was not present at the arrests and has never met Bradshaw. [Doc. 44, Norwood Aff. ¶ 13.]

Bradshaw summarily alleges that Bradshaw violated his constitutional right by "failure to properly document, communicate or discover the dismissal of said complaint by the other defendants. . . .". [Doc. 1, ¶ 27.] However, it is of no import to the probable cause inquiry that the complaint against Bradshaw was later dismissed. *See* Wright v. City of Philadelphia, 409 F.3d 595, 602 (3d Cir. 2005) ("[I]t is irrelevant to the probable cause analysis what crime a suspect is eventually charged with or whether a person is later acquitted of the crime for which she or he was arrested.") *See also* Baker v. McCollan, 443 U.S. 137, 145 (1979) (there is no constitutional guarantee that only the guilty will be arrested).

Because the Court determines that Bradshaw failed to show that Norwood violated a constitutional or statutory right, it need not analyze whether the right was clearly established. "Decision of this purely legal question permits courts expeditiously to weed out suits which fail the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on its merits." Romero, 45 F.3d at 1475 (internal citation omitted).

The Court concludes that Norwood is entitled to qualified immunity as to the Fourth Amendment claims asserted against him. Bradshaw clearly failed to demonstrate that Norwood was "plainly incompetent," or that he "knowingly violated the law," thereby foreclosing the defense of qualified immunity.

### 2. *Defendant City of Farmington*

It is difficult to determine what claims Bradshaw seeks to bring against the City. He states that "the City, County, State and Center" all "deprived him of his fourth amendment right to be free

from unreasonable seizures when they failed to properly process his dismissal and arrested him with properly checking documentation that would have provided sufficient information to know that the criminal charges were dismissed." [Doc. 1, ¶ 21.] Bradshaw alleges that the City and other Defendants did not properly document or communicate to each other that the Criminal Complaint against him was dismissed or that the Defendants or "some person within these entities" "purposely removed the dismissal of the subject arrest warrant from the record keeping system, or added the arrest warrant back in after it had been removed." [Doc. 1, ¶ 18.]

The Court already determined that Norwood is entitled to qualified immunity because there is no evidence to support a finding that he violated Bradshaw's constitutional or statutory rights. Thus, to the extent that Bradshaw seeks to hold the City vicariously liable for Norwood's alleged unlawful conduct, his claim against the municipality must fail. *See* Trigalet v. City of Tulsa, Okl., 239 F.3d 1150, 1154 (10th Cir.) (municipality may not be held liable under section 1983 unless the actions of its employees violated a plaintiff's constitutional rights) (*citing* City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)), *cert. denied*, 534 U.S. 814 (2001).

Moreover, the Court already discussed *supra* that Bradshaw does not have a constitutional right to be free from arrest if there was probable cause for the arrest warrant, even if the criminal complaint is later dismissed.

In addition, the Court concludes that there is insufficient evidence to support a claim for municipal liability against the City of Farmington. Bradshaw fails make even the bare allegation that the City's official policy, custom or practice caused a constitutional deprivation.

> To establish a claim for damages under § 1983 against municipal entities or local government bodies, the plaintiff must prove (1) the entity executed a policy or custom (2) that caused the plaintiff to suffer deprivation of constitutional or other federal rights. Whitesel, 222 F.3d at 870. That is, " 'a municipality cannot be held liable

13

>> under § 1983 on a respondeat superior theory.' " Leatherman, 507 U.S. at 166, 113 S.Ct. 1160 (*quoting* Monell, 436 U.S. at 691, 98 S.Ct. 2018).

Moss v. Kopp, __ F.3d __, 2009 WL 692832, * (10th Cir. Mar. 18, 2009).

For the above stated reasons, Bradshaw's claims against the City fail under Fed. R. Civ. P. 56(c) because there are no genuine issues of material fact in dispute to proceed to a fact finder. In addition, it is highly doubtful that Bradshaw's Fourth Amendment claims against the City state a claim to relief "that is plausible on its face" under Fed. R. Civ. 12(b)(6). *See* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (setting forth clarified Rule 12(b)(6) standard).

### III.     SUMMARY JUDGMENT AS TO STATE LAW CLAIMS

####    A.     **Legal Standard**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986); Concrete Works, Inc. v. City & County of Denver, 36 F.3d 1513, 1517 (10th Cir. 1994), *cert. denied*, 514 U.S. 1004 (1995). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. Allen v. Muskogee, 119 F.3d 837, 839-40 (10th Cir. 1997), *cert. denied*, 522 U.S. 1148 (1998).

####    B.     **State Tort Claims of False Imprisonment and Intentional Infliction of Emotional Distress**

Defendants request that the Court grant summary judgment on Bradshaw's two state tort claims of false imprisonment and intentional infliction of emotional distress ("IIED"). They specify,

however, that they do not seek summary judgment on the third state law claim of defamation. [Doc. 44, p. 3.] Therefore, the Court analyzes only whether Defendants are entitled to summary judgment on the claims of false imprisonment and IIED.

### 1.  *False Imprisonment*

Bradshaw's state tort claim of false imprisonment against Norwood or the City fails as a matter of law. First, it is undisputed that neither Norwood nor the City of Farmington imprisoned Bradshaw. The arrest and imprisonment occurred a year or two after the arrest warrant was issued and did not involve Norwood or the City.

Second, even if Norwood had arrested Bradshaw in accordance with the arrest warrant "[u]nder the prevailing view in this country a peace officer who arrests someone with probable cause is not liable for false arrest simply because the innocence of the suspect is later proved." Anderson v. Creighton, 483 U.S. 635, 636-37 (1987) (*citing* Restatement, Second, Torts § 121 (1965); 1 Harper & James, The Law of Torts § 3.18, at 277-278 (1956)). "A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does." (internal citations omitted). *See also* Romero, 45 F.3d 1480 ("a police officer does not commit false imprisonment merely by arresting ana individual who happens to be innocent").

The Court already determined that Norwood had probable cause to support the issuance of the arrest warrant and that he was entitled to qualified immunity as to any claim of false imprisonment brought under the Fourth Amendment. It follows that the state law claim of false imprisonment also fails as a matter of law under either Rule 56(c) or Rule 12(b)(6).

### 2.  *IIED*

Bradshaw alleges a claim of IIED against Norwood, stating that Norwood did not have probable cause to issue a criminal complaint. [Doc. 1, ¶ 32.] He further alleges that he suffered extreme emotional distress, damage to his reputation and lost income as a direct result of defendants' actions. [Doc. 1, ¶ 35.] "Defendants' actions would cause any reasonable person an amount of distress with which they would not be able to cope." [Doc. 1, ¶ 36.]

New Mexico law defines the tort of IIED as follows:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm. The extreme and outrageous conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1222 (10th Cir. 2007) (internal citations omitted) (applying New Mexico state law).

Bradshaw did not allege that Norton acted intentionally or recklessly so as to cause severe emotional distress to Bradshaw. The allegations do not come close to asserting a claim for conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency. . . ." Moreover, the Court already concluded that Norton had probable cause to support his application for an arrest warrant, for all of the reasons discussed *supra*.

Even if Bradshaw made the requisite allegations, the Court must dismiss this claim as the legislature has not waived immunity for this tort under the New Mexico Tort Claims Act ("NMTCA"), § 41-4-12 NMSA 1978. The NMTCA waives immunity for "personal injury," including injury inflicted by law enforcement officers, but only for injuries "resulting from" an expressly-defined list of torts. The tort of IIED is not listed as a tort for which immunity is waived.

§ 41-4-12 NMSA.  *See also* Romero v. Otero, 678 F. Supp. 1535, 1540 (D. N. M. 1987) (holding that the NMTCA does not waive the immunity of law enforcement officers for intentional infliction of emotional distress because it is not one of the enumerated acts under § 41-4-12).  Therefore, Bradshaw's claim of IIED must be dismissed, with prejudice.

IT IS THEREFORE ORDERED that Defendant Norwood's and the City of Farmington's Motion for Partial Summary Judgment is GRANTED, with the result that the Fourth Amendment claims against Norwood and the City are DISMISSED, with prejudice, for the reasons stated above, and that the state law claims of wrongful imprisonment and intentional infliction of emotional distress, as asserted against Norwood or the City are also DISMISSED, with prejudice, for the reasons stated above.  The claim of defamation proceeds against Defendants Norwood or the City, to the extent it is alleged against these Defendants.[3]

                                            *Lorenzo F. Garcia*
                                            Lorenzo F. Garcia
                                            Chief United States Magistrate Judge

---

[3] The Court encourages the parties to attempt to resolve the claim of defamation if asserted against Norwood or the City, without the need for additional motion practice.  "Courts regularly hold that upsetting but true news reports do not constitute conduct so extreme and outrageous as to permit recovery.  Specifically, a New Mexico court has stated that '[a]s a general proposition, accurate publication of newsworthy events does not give rise to a cause of action for intentional infliction of emotional distress.'"  Alvarado, 493 F.3d at 1222.  If the parties agree that the claim can be dismissed against these defendants, then these defendants will be dismissed from the lawsuit.